257 P.3d 245

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Kevin K. NESMITH, Defendant–Appellant.**

**No. CAAP–10–0000072.**

Intermediate Court of Appeals of Hawai'i.

June 22, 2011.

Timothy I. MacMaster, on the briefs, for Defendant–Appellant.

Delanie D. Prescott–Tate, Deputy Prosecuting Attorney City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

NAKAMURA, C.J., and REIFURTH, J.; with FOLEY, J., Concurring Separately.

Opinion of the Court by NAKAMURA, C.J.

Defendant–Appellant Kevin K. Nesmith (Nesmith) was charged by complaint with operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E–61(a)(1) and/or (a)(3) (Supp. 2009),[1] as a firsttime offender under HRS § 291E–61(b)(1) (Supp. 2009).[2] The question presented in this appeal is whether the complaint was insufficient because it failed to allege a mens rea. We hold that a complaint charging OVUII in violation of HRS § 291E–61(a)(1) or (a)(3) is not required to allege a mens rea to be sufficient.

**I.**

The complaint charged Nesmith as follows:

On or about the 7th day of January, 2010, in the City and County of Honolulu, State of Hawaii, KEVIN K. NESMITH did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E–61(a)(1) and/or (a)(3) of the *Hawaii Revised Statutes*. KEVIN K. NESMITH is subject to sentencing as a first offender in accordance with Section 291E–61(b)(1) of the *Hawaii Revised Statutes*.

Prior to trial, Nesmith filed a Motion to Dismiss Re: Failure to Allege an Essential Fact (Motion to Dismiss). Nesmith asserted that an essential fact the prosecution was required to prove to establish the charged OVUII offense was that the defendant acted intentionally, knowingly, or recklessly. He argued that the complaint was deficient and must be dismissed because the complaint failed to allege a mens rea. Plaintiff–Appellee State of Hawai'i (State) filed a memorandum in opposition to the Motion to Dismiss, arguing that Nesmith's state of mind was not

---

1.  HRS § 291E–61(a) provides:
    **Operating a vehicle under the influence of an intoxicant.**
    (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
    (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
    (2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
    (3) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

2.  At the time relevant to this case, HRS § 291E–61(b) set forth different penalties for a first-time offender with no prior OVUII–related convictions within a five-year period (HRS § 291E–61(b)(1)); a second-time offender with one prior OVUII–related conviction within a five-year period (HRS § 291E–61(b)(3)); and a third-time offender with two prior OVUII–related convictions within a five-year period (HRS § 291E–61(b)(4)), with the penalties increasing with the number of prior OVUII–related convictions.

an essential element of the charged OVUII offense and therefore did not need to be alleged for the complaint to be sufficient. The District Court of the First Circuit (District Court)[3] denied Nesmith's Motion to Dismiss. Nesmith was tried, found guilty, and sentenced. The District Court entered its Judgment on July 7, 2010.

## II

On appeal, Nesmith argues that the complaint was insufficient because it failed to allege the required mens rea, namely, that he committed the offense intentionally, knowingly, or recklessly. He contends that this mens rea was an "essential fact" the complaint was required to state under Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d) (2008)[4] and that without a mens rea allegation, the complaint failed to provide adequate notice of the offense charged.

We hold that the complaint was sufficient. The statute defining the charged OVUII offense, HRS § 291E–61 (Supp.2009), does not specify a required state of mind. The complaint alleged all the essential elements of the charged OVUII offense[5] and provided Nesmith with fair notice of the offense charged. The complaint alleged that Nesmith committed the charged OVUII offense by two alternative means: (1) violating HRS § 291E–61(a)(1) and/or (2) violating HRS § 291E–61(a)(3). The complaint was not deficient for failing to allege a mens rea because: (1) with respect to the violation of HRS § 291E–61(a)(3), an HRS § 291E–61(a)(3) violation is an absolute liability offense that does not require proof of mens rea; and (2) with respect to the violation of HRS § 291E–61(a)(1), mens rea is not an

essential element of that violation and can be inferred from the allegations in the complaint. We affirm the District Court's Judgment.[6]

## III.

The Hawai'i Supreme Court has set forth the following guidelines for evaluating the sufficiency of a charge. "It is well settled that an accusation must sufficiently allege all of the essential elements of the offense charged...." *State v. Wheeler*, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178 (2009) (internal quotation marks and citation omitted).

"[T]he sufficiency of the charging instrument is measured, inter alia, by 'whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet[.]'" *Wheeler*, 121 Hawai'i at 391, 219 P.3d at 1178 (quoting *State v. Wells*, 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995)) (some brackets in original, some added). "In other words, the ... charge must be worded in a manner such 'that the nature and cause of the accusation [could] be understood by a person of common understanding[.]'" *[State v.] Sprattling*, 99 Hawai'i [312,] 318, 55 P.3d [276,] 282 [ (2002) ] (quoting *State v. Israel*, 78 Hawai'i 66, 70, 890 P.2d 303, 307 (1995)) (brackets in original). The relevant inquiry, therefore, is whether or not the charge provided the accused with fair notice of the essential elements. *Wheeler*, 121 Hawai'i at 395, 219 P.3d at 1182. This court has recognized that " '[a] charge defective in this regard amounts to a failure to state an offense, and a conviction based

---

3. The Honorable Paula Devens presided.

4. HRPP Rule 7(d) provides, in relevant part: "**(d) Nature and contents.** The charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged."

5. In addition to alleging the essential elements embodied in the language of HRS § 291E–61(a)(1) and (a)(3), the complaint alleged that the offense occurred "upon a public way, street, road, or highway," an essential element under *State v. Wheeler*, 121 Hawai'i 383, 390–96, 219 P.3d 1170, 1177–83 (2009), and Nesmith's prior conviction status, an essential element under

*State v. Ruggiero*, 114 Hawai'i 227, 237–41, 160 P.3d 703, 713–17 (2007).

6. In light of our disposition of this appeal, we need not address the State's claim that we should affirm the District Court because Nesmith failed to order the transcript of the hearing at which the District Court denied his Motion to Dismiss. We do note, however, that Nesmith failed to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rules 10(b)(2) and 10(b)(4) (2010). Nesmith's counsel is cautioned that future violations of the rules may result in sanctions.

upon it cannot be sustained, for that would constitute a denial of due process.'" *Id.* at 391, 219 P.3d at 1178 (quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)).

*State v. Mita,* 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010) (some brackets in original, some added; ellipsis points added). "Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." *Id.* at 389, 245 P.3d at 462 (internal quotation marks, brackets, ellipsis points, and citation omitted).

### IV.

■ "Under the Hawai'i Penal Code, the essential elements of an offense are (1) conduct; (2) attendant circumstances; and (3) results of conduct." *Id.* at 391, 245 P.3d at 464; *see* HRS § 702–205 (1993). The complaint against Nesmith alleged the essential elements of the charged OVUII offense under both the HRS § 291E–61(a)(1) and the HRS § 291E–61(a)(3) means of committing the offense. The state of mind is not an element of a criminal offense, *State v. Klinge,* 92 Hawai'i 577, 584 n. 3, 994 P.2d 509, 516 n. 3 (2000); *State v. Aganon,* 97 Hawai'i 299, 303, 36 P.3d 1269, 1273 (2001), but must be proved if required. *See* HRS § 701–114 (1993); HRS § 702–204 (1993).

There is no required state of mind specified in the statute defining the charged OVUII offense. Nesmith was charged with OVUII in violation of HRS § 291E–61(a)(1) and/or (a)(3), which provide:

(a) A person commits the offense of operating a vehicle under the influence of an

7. HRS § 702–204 provides:
 **State of mind required.** *Except as provided in section 702–212,* a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. *When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.*
 (Emphases added).
8. The charges in *Young* were based on HRS § 291–4(a) (1985), which provided as follows:

intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]
 . . . .
(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

Except as provided in HRS § 702–212 (1993), if the statute defining the offense does not specify a state of mind, the default states of mind of intentionally, knowingly, or recklessly apply to each element of the offense. HRS § 702–204; [7] *State v. Bayly,* 118 Hawai'i 1, 10, 185 P.3d 186, 195 (2008). HRS § 702–212, in turn, provides that the default states of mind prescribed by HRS § 702–204 do not apply to "[a] crime defined by statute other than [the Hawaii Penal Code], insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears." HRS § 702–212(2). The statute defining the charged OVUII offense, HRS § 291E–61, is not part of the Hawaii Penal Code.

### A.

■ Citing *State v. Young,* 8 Haw.App. 145, 795 P.2d 285 (1990), the State asserts that the violation of HRS § 291E–61(a)(3) is an absolute liability offense that does not require proof of mens rea. We agree.

In *Young,* this court held that the HRS § 702–212 exception to the imposition of default states of mind under HRS § 702–204 applied to HRS § 291–4(a)(2) (1985) [8] the

**Driving under influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.
*Young,* 8 Haw.App. at 147 nn. 1–2, 795 P.2d at 288 nn. 1–2.

predecessor to HRS § 291E–61(a)(3) and (a)(4). Like HRS § 291E–61(a)(3), HRS § 291–4(a)(2) defined the driving-under-the-influence offense by reference to a measurement of the quantity of alcohol in a person's body. For purposes of our mens rea analysis, there is no material substantive difference between HRS § 291–4(a)(2) and HRS § 291E–61(a)(3).

In determining that the violation of HRS § 291–4(a)(2) was an absolute liability offense because the legislative purpose to impose absolute liability plainly appeared, this court in *Young* stated:

> By enacting HRS § 291–4(a)(2), "the legislature permitted proof of DUI [ (driving under the influence of intoxicating liquor) ] by merely showing that a defendant drove a vehicle with a BAC [ (blood alcohol concentration) ] of 0.10 percent or more." *State v. Wetzel*, 7 Haw.App. 532, [539], 782 P.2d 891, 895 (1989) (footnote omitted). *Thus, the legislative purpose of HRS § 291–4(a)(2) was "to impose absolute liability for such offense or with respect to any element thereof," as provided in HRS § 702–212(2).* Accordingly, we stated in *State v. Christie*, 7 Haw.App. 368, [370], 764 P.2d 1245, 1246, *aff'd,* 70 Haw. 158, 766 P.2d 1198 (1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), that DUI has been "a *per se* offense" under HRS § 291–4(a)(2) since 1983.

*Young*, 8 Haw.App. at 153–54, 795 P.2d at 291 (emphasis added). Having determined that the violation of HRS § 291–4(a)(2) was an absolute liability offense, this court ruled that "[t]he trial court did not err in refusing to instruct the jury that a finding of mens rea was required under HRS § 291–4(a)(2)." *Id.* at 154, 795 P.2d at 291.

Based on *Young*, we conclude that the violation of HRS § 291E–61(a)(3) is an absolute liability offense for which proof of mens rea is not required. *See State v. Caleb,* 79 Hawai'i 336, 339, 902 P.2d 971, 974 (1995) ("We have long held that DUI is a per se offense under HRS § 291–4(a)(2)."); *State v. Mezurashi,* 77 Hawai'i 94, 96, 881 P.2d 1240, 1242 (1994) (stating that "DUI has been a per se offense under HRS § 291–4(a)(2)"

since subsection (a)(2) was enacted in 1983). In this regard, we note that this court's decision in *Young*, which interpreted HRS § 291–4(a)(2) as establishing an absolute liability offense, was issued in 1990. Since then, the Legislature has amended HRS § 291–4(a)(2) and recodified it as HRS § 291E–61(a)(3) and (a)(4) without altering the statutory language relevant to mens rea. This supports the view that the violation of HRS § 291E–61(a)(3) should be interpreted as an absolute liability offense. *See State v. Hussein,* 122 Hawai'i 495, 529, 229 P.3d 313, 347 (2010) ("Where the legislature fails to act in response to our statutory interpretation, the consequence is that the statutory interpretation of the court must be considered to have the tacit approval of the legislature and the effect of legislation." (internal quotation marks and citation omitted)); *Honolulu Star Bulletin, Ltd. v. Burns,* 50 Haw. 603, 607, 446 P.2d 171, 173 (1968) (concluding that the legislature's failure to give the statute a different meaning after it was construed by the court, despite ample opportunity to do so, amounts to legislative approval of the court's construction).

The conclusion that the violation of HRS § 291E–61(a)(3) is an absolute liability offense is supported by decisions from other jurisdictions that have construed statutes similar to HRS § 291E–61(a) as establishing absolute or strict liability offenses. *E.g., State v. Miller,* 309 Or. 362, 788 P.2d 974 (1990); *State v. Hammond,* 118 N.J. 306, 571 A.2d 942 (1990); *English v. State,* 603 N.E.2d 161 (Ind.Ct.App.1992). Indeed, "[t]he majority of jurisdictions addressing [the] issue [have] concluded that driving while under the influence is an absolute liability offense." *City of Wichita v. Hull,* 11 Kan.App.2d 441, 724 P.2d 699, 702 (1986) (citing numerous cases).

Because the violation of HRS § 291E–61(a)(3) is an absolute liability offense, the State was not required to allege any mental state in charging Nesmith with OVUII in violation of HRS § 291E–61(a)(3). Thus, the complaint was sufficient to charge Nesmith with OVUII in violation of HRS § 291E–61(a)(3).

**B.**

The State does not argue that OVUII in violation of HRS § 291E–61(a)(1) is an absolute liability offense, but states that "according to [HRS § ] 702–204 (1993), at trial the State must prove beyond a reasonable doubt that [Nesmith] acted intentionally or knowingly or recklessly in regards to each element of [HRS § ] 291E–61(a)(1) (Supp. 2009)." In light of the State's concession, we will assume for purposes of our analysis that the default states of mind prescribed by HRS § 702–204 apply to each element of the HRS § 291E–61(a)(1) means of committing the charged OVUII offense.

Although mens rea, if required, must be proved to establish an offense, *see* HRS § 701–114, whether mens rea must be alleged for the charge to be sufficient presents a different question. The evaluation of the sufficiency of a charge focuses on whether it contains all the essential elements of the offense and adequately apprises the defendant of what he or she must be prepared to meet. *Wheeler,* 121 Hawai'i at 391, 219 P.3d at 1178; *Mita,* 124 Hawai'i at 390, 245 P.3d at 463. The state of mind is not an element of an offense. *Klinge,* 92 Hawai'i at 584 n. 3, 994 P.2d at 516 n. 3; *Aganon,* 97 Hawai'i at 303, 36 P.3d at 1273. In addition, HRS § 806–28 (1993) indicates that where no mens rea is specified in the statutory definition of the offense, no mens rea needs to be alleged in charging that offense. HRS § 806–28 provides in relevant part that "[t]he indictment need not allege that the offense was committed or the act done 'feloniously', 'unlawfully', 'wilfully', 'knowingly', 'maliciously, 'with force and arms', *or otherwise except where such characterization is used in the statutory definition of the offense."* (Emphasis added.) [9]

Here, the complaint contained all the essential elements of the HRS § 291E–61(a)(1) means of committing the charged OVUII offense. *See Mita,* 124 Hawai'i at 390, 245 P.3d at 463 (stating that the relevant inquiry in determining the sufficiency of a charge is whether it "provided the accused with fair

notice of the essential elements"). Moreover, an indictment need not allege that the crime was committed intentionally, knowingly, or recklessly, "except where such characterization is used in the statutory definition of the offense." HRS § 806–28; *see State v. Torres,* 66 Haw. 281, 285, 660 P.2d 522, 525 (1983). The statutory definition of the charged OVUII offense, including HRS § 291E–61(a)(1), does not specify a required state of mind.

Precedents of the Hawai'i Supreme Court and this court establish that the failure of the complaint against Nesmith to allege a mens rea did not render the complaint insufficient as to the HRS § 291E–61(a)(1) means of committing the charged OVUII offense. These precedents make clear that the default states of mind under HRS § 702–204 can fairly be inferred from the allegations contained in the complaint against Nesmith and the nature of the charged OVUII offense.

In *Torres,* the Hawai'i Supreme Court considered whether a count of an indictment that charged the defendant with incest, under a statute that did not specify a mental state, was insufficient for failure to allege the mental state necessary to establish the offense. *Torres,* 66 Haw. at 283–89, 660 P.2d at 524–27. The court noted that incest was a felony and determined that the offense "demands a showing that the defendant acted intentionally." *Id.* at 284, 660 P.2d at 524. The court, however, concluded that the incest charge was sufficient, reasoning as follows:

> Our conclusion that the crime was unmistakably defined despite the lack of an explicit averment of the mental state accompanying the prohibited act rests on the nature of the offense charged and the earlier conclusion that it is not a crime that can be accidentally or innocently committed. In some situations knowledge or intent "need not be alleged in terms, and a pleading is good if it fairly imports knowledge or intent." *United States v. Arteaga–Limones,* 529 F.2d 1183, 1199 (5th Cir. 1976); 1 C. Wright, *Federal Practice &*

---

**9.** Although HRS § 806–28 refers to an "indictment," which is used to charge a felony offense, we see no logical reason why its provisions

would not also apply to a complaint used to charge a petty misdemeanor offense.

*Procedure* § 125, at 377–78 (1982). Incest as charged here is an offense where intent can be inferred because "sexual intercourse" under the circumstances alleged could only be a wilful act.

*Id.* at 289, 660 P.2d at 527.

In *State v. Kane,* 3 Haw.App. 450, 652 P.2d 642 (1982), Kane was charged with carrying on his person a pistol or revolver without a permit or license, in violation of HRS § 134–9 (Supp.1980). *Id.* at 451, 652 P.2d at 643–44. The statute defining the offense did not specify a mental state, and the indictment charging Kane did not allege that he acted with any mens rea in committing the crime. *Id.* at 451–53, 652 P.2d at 644–45. This court held that the indictment was sufficient, concluding that "the allegation in the indictment that Kane 'did carry on his person a pistol or revolver without a permit or license to carry a firearm' was sufficient to imply that Kane did so 'intentionally, knowingly, or recklessly.' " *Id.* at 458, 652 P.2d at 648. In *State v. McDowell,* 66 Haw. 650, 651, 672 P.2d 554, 555 (1983), the Hawai'i Supreme Court adopted this court's analysis in *Kane* and applied it to the analogous offense of possession of a sawed-off rifle.

In *Territory v. Tacuban,* 40 Haw. 208 (1953), Tacuban was convicted of participating in a gambling game. Tacuban was charged pursuant to a complaint that alleged, in relevant part, that he " '. . . did participate in a certain gambling game, known as Monte . . .' " *Id.* at 212 (ellipsis points in original). Tacuban argued that the complaint was deficient because it failed to allege any scienter. *Id.* In rejecting that argument, the court stated:

> An allegation of participation or taking part in a gambling game connotes guilty knowledge, and inferentially alleges scienter. "An essential ingredient of an offense may be alleged inferentially as well as

directly and when so alleged is sufficient [and authorities cited]." (*Territory v. Santana,* [37 Haw. 586], p. 589 [ (1947) ].) The inferential allegation created by the charge: ". . . did participate in a certain gambling game, known as Monte . . ." is sufficient under the rule pronounced in the *Santana* case *supra.*

*Id.* (some brackets in original).

The complaint in Nesmith's case included the language of § 291E–61(a)(1) and alleged that Nesmith "did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty[.]" Consistent with *Torres, Kane, McDowell,* and *Tacuban,* we conclude that an intentional, knowing, or reckless state of mind can be inferred from this conduct alleged in the complaint. Driving or assuming physical control of a vehicle on a public road while impaired by alcohol creates a grave danger to public safety and "fairly imports" intentional, knowing, or reckless behavior. *See Torres,* 66 Haw. at 289, 660 P.2d at 527. The referenced allegations in the complaint and the nature of the charged offense are sufficient to imply and connote that Nesmith committed the charged OVUII offense intentionally, knowingly, or recklessly. *See id.; Kane,* 3 Haw.App. at 458, 652 P.2d at 648; *Tacuban,* 40 Haw. at 212; *see also State v. Creamer,* 26 Kan.App.2d 914, 996 P.2d 339, 345 (2000).[10] This conclusion is bolstered by the additional allegations in the complaint that Nesmith did operate or assume control of a vehicle on a public road "with .08 or more grams of alcohol per two hundred ten liters of breath[.]" Accordingly, the complaint was sufficient to charge Nesmith with OVUII in violation of HRS § 291E–61(a)(1)[11]

We reject Nesmith's claim that because no mens rea was alleged, the complaint failed to

---

10. In *Creamer,* the court noted that Kansas recognizes driving under the influence of alcohol or drugs as an absolute liability offense. *Creamer,* 996 P.2d at 343. However, the court further stated that "[t]he action of driving a motor vehicle while under the influence of drugs or alcohol is a wilful act and is sufficient to satisfy any general intent requirements of [a Kansas statute, which provides that criminal intent may be es-

tablished by intentional or reckless conduct]." *Id.* at 345.

11. Although we have concluded that the violation of HRS § 291E–61(a)(3) is an absolute liability offense, even if it were not, the complaint would be sufficient as to the § 291E–61(a)(3) violation for the same reasons that it is sufficient as to the § 291E–61(a)(1) violation.

state an "essential fact" of the offense charged, as required by HRPP Rule 7(d), and provided inadequate notice of the offense charged. As we have explained, the allegations in the complaint stated the essential elements of the charged OVUII offense and were sufficient to imply that Nesmith acted intentionally, knowingly, or recklessly. The complaint met the standards for a valid complaint set forth in *Mita* and *Wheeler*. We conclude that the complaint satisfied the "essential facts" requirement of HRPP Rule 7(d) and gave Nesmith adequate notice of the offense charged.

## V.

For the foregoing reasons, we conclude that the complaint against Nesmith was sufficient, and we affirm the July 7, 2010, Judgment of the District Court.

Concurring Opinion by FOLEY, J.

I concur in the result. The charge was sufficient under *State v. Wheeler*, 121 Hawaiʻi 383, 219 P.3d 1170 (2009)