NOT DESIGNATED FOR PUBLICATION

No. 127,863

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AUSTIN BUELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wallace District Court; SCOTT SHOWALTER, judge. Submitted without oral argument. Opinion filed May 22, 2026. Affirmed.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: A jury convicted Austin Buell of five counts of aggravated violation of the Kansas Offender Registration Act (KORA) and one count of violation of KORA.

On appeal, Buell raises three issues. First, Buell alleges the district court erred by denying his request for a jury instruction that included a culpable mental state for each crime. But Buell's requested instruction would not have been legally appropriate because

1

no culpable mental state is required for a violation or aggravated violation of KORA. Such violations are considered strict liability crimes.

Second, Buell argues that the district court made two errors related to how it responded to a jury question. It is true the district court violated K.S.A. 22-3420(d) by holding a discussion with the State's attorney on how to respond to a jury question outside Buell's presence, though the district court had consulted with Buell's attorney and received his approval. And the district court also violated K.S.A. 22-3420(d) when it instructed a court clerk to deliver an oral response to the jury question rather than the court delivering the response in writing or in open court. But we find these errors were harmless because the State has met its burden of proof to show that there was no reasonable possibility that the errors contributed to the verdict.

Finally, Buell alleges the court erred when it refused to instruct the court reporter to perform a readback of trial testimony requested by the jury. K.S.A. 22-3420(d) gives the trial court discretion in answering a jury's request for a readback of testimony. The district court did not abuse its discretion because it gave a meaningful response by explaining to the jury that such a request would be very difficult to fulfill, and that the jurors would need to use their recollection. Moreover, Buell waived this argument by failing to preserve it through an objection at trial. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Austin Buell was required to register under KORA due to a 2015 conviction for indecent solicitation of a child. As part of his registration requirements, Buell was required to complete a registration form that asked for "'[a]ll email addresses; online identities; personal web pages; screen names; site affiliations; and designations.'"

To complete the registration, Buell was also required to review and sign an acknowledgment that stated, "'If I use the Internet, I am required to report to the registering law enforcement agency any and all: email addresses; online identifiers [sic]; information relating to membership in any and all personal web pages or online social networks; and internet screen names. See K.S.A. 22-4907(a)(19).'"

As time went on, law enforcement became concerned that Buell's online activity was not in compliance with his KORA registration requirements. Wallace County Sheriff's Deputy Ronnie Cloyd began investigating Buell's potential violations. Cloyd learned that Buell had TikTok and Snapchat accounts and verified Buell's usernames by viewing posts that included photos and videos of Buell, pictures of Buell's vehicles, and other identifiers. Cloyd concluded that Buell had failed to identify the TikTok and Snapchat accounts on any of his KORA registrations.

Buell's electronic devices were seized as the result of a search warrant. Forensic analysis revealed activity by Buell on Snapchat and TikTok at various times between December 6, 2019, and July 4, 2022. On December 18, 2023, Buell was convicted of five counts of aggravated violation of KORA and one count of violation of KORA. At sentencing, the district court ordered the sentence for each count to run concurrently for a controlling prison sentence of 72 months.

Buell timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERR BY DENYING BUELL'S REQUEST FOR A JURY INSTRUCTION THAT INCLUDED A CULPABLE MENTAL STATE?

Buell's first argument on appeal is that the district court erred when it denied his request for a jury instruction that was based on PIK Crim. 4th 52.010 (2021 Supp.).

*Standard of Review*

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

Appellate courts consider whether the instruction was legally and factually appropriate using an unlimited standard of review of the entire record. *Hollins*, 320 Kan. at 242.

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). If a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3). If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests. If the instructional error impacts a constitutional right, an appellate court assesses whether the error was harmless under the federal constitutional harmless error standard. *State v. Holley*, 313 Kan. 249, 254, 256-57, 485 P.3d 614 (2021). A court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or

did not affect the outcome of the trial in light of the entire record, i.e., proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]), *cert. denied* 565 U.S. 1221 (2012). When no constitutional right is impacted, the court must determine if there is a reasonable probability that the error will or did affect the trial's outcome in light of the entire record. *State v. Campbell*, 317 Kan. 511, 518, 532 P.3d 425 (2023).

*The district court did not err in denying Buell's requested jury instruction.*

During his jury trial, Buell requested a jury instruction based on PIK Crim. 4th 52.010. This pattern instruction informs the jury that the State must prove the defendant committed a crime intentionally, knowingly, or recklessly. The instruction also defines those three terms as stated in K.S.A. 21-5202(h)-(j). The district court denied Buell's request for the instruction.

Buell's argument on appeal is that he was entitled to an instruction under PIK Crim. 4th 52.010, because "[a] person must know of their duty to register and what is required when they register." He believes that the jury should have been instructed on "the definition of a knowing state of mind" but instead, the district court "gave the jury no instruction on what they were to consider regarding intent."

A culpable mental state is an essential element of all Kansas crimes, except those exempted by statute. K.S.A. 21-5202(a). "A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'" K.S.A. 21-5202(a). Further, if the definition of a crime does not include a culpable mental state, then one is required unless the definition "plainly dispenses with any mental element." K.S.A. 21-5202(d).

5

Buell was convicted of five counts of aggravated violation of KORA, and one count of violation of KORA. The statutory basis for both crimes is found at K.S.A. 22-4903. Subsection (a) defines the crime of violation of KORA: "Violation of the Kansas offender registration act is the failure by an offender, as defined in K.S.A. 22-4902, and amendments thereto, to comply with any and all provisions of such act, including any and all duties set forth in K.S.A. 22-4905 through 22-4907, and amendments thereto." K.S.A. 22-4903(a). Here, the State alleged that Buell failed to comply with the duties set forth in K.S.A. 22-4907(a)(19), which requires offenders to provide "any and all: E-mail addresses, online identities used by the offender on the internet; information relating to membership in any and all personal web pages or online social networks; and internet screen names."

When a violation continues for more than 180 consecutive days, it becomes an aggravated violation of KORA. And each additional 180-day period of non-compliance may be charged as a separate count of aggravated violation of KORA. K.S.A. 22-4903(b). Due to Buell's multiple timeframes of noncompliance, he was convicted of five counts of aggravated violation of KORA.

Notably, there is no mental state required in the language of K.S.A. 22-4903(a) or (b). And Kansas law is clear—a person may be guilty of a violation of KORA without having a culpable mental state pursuant to K.S.A. 21-5203(e):

> "A person may be guilty of a crime without having a culpable mental state if the crime is:
>
> . . . .
>
> "(e) a violation of K.S.A. 22-4901 et seq., and amendments thereto." K.S.A. 21-5203(e) (referencing KORA).

6

See *State v. Genson*, 316 Kan. 130, 143, 513 P.3d 1192 (2022). When considering a strict liability offense, "The only fact to be determined in these cases is whether the defendant did the act." *State v. Thomas*, 313 Kan. 660, 664, 488 P.3d 517 (2021).

Buell's argument on appeal is that despite K.S.A. 21-5203(e) clearly dispensing with any mens rea requirement for the crime of violation of KORA, he believes his specific situation does not fall under the statute and that a culpable mental state should have been included in the jury instructions. Buell acknowledges that *Genson*, 316 Kan. 130, controls his issue on appeal, but believes his case is distinguishable.

In *Genson,* the defendant was convicted of a violation of KORA when he failed to register as required. The Kansas Supreme Court granted Genson's petition for review on a single issue—a substantive due process claim related to the strict liability of a KORA violation. *Genson*, 316 Kan. at 134-35. The court concluded that K.S.A. 2020 Supp. 21-5203(e) does not unconstitutionally impair substantive due process rights by making violation of KORA a strict liability felony. See 316 Kan. at 136. The court confirmed that violation of KORA is a strict liability crime with no culpable mental state required. See 316 Kan. at 139-40.

In an attempt to distinguish his situation, Buell argues that in *Genson,* the defendant actually *failed* to register, but Buell instead registered but *omitted* required information during his registration. He argues that the State was required to prove he *knew* of the requirement to include specific internet-related information, and thus, the district court was required to instruct on the culpable mental state. But Buell has failed to cite any legal authority in support of his point or show why his point is sound despite the lack of supporting authority. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). And to the contrary, the Kansas Legislature was clear in its language of K.S.A. 21-5203(e) that a violation of KORA requires no culpable mental state. Buell violated

KORA by failing to comply with its provisions under K.S.A. 22-4907(a)(19) related to internet activity.

Buell also suggests the requisite intent could be "intentional" because his crime was a crime of omission. He argues, "K.S.A. 21-5201(a) states, 'A person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession.' K.S.A. 21-5201(a) requires the Defendant to voluntarily commit the crime. This requires an intent." In other words, Buell believes that one must intend to voluntarily commit an omission. But again, Buell fails to cite any authority that persuades us to ignore the plain language of K.S.A. 21-5203(e) that clearly states "[a] person may be guilty of a crime without having a culpable mental state if the crime is . . . a violation of [KORA]."

Buell believes *Genson* actually supports his argument that a violation of KORA requires a culpable mental state. He notes that the *Genson* court relied on *Lambert v. California*, 355 U.S. 225, 227-30, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957):

> "'We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. . . . Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community. [Citations omitted.]' (Emphases added.) *Lambert*, 355 U.S. at 227-30, 78 S. Ct. 240." *Genson*, 316 Kan. at 142.

Notably, later in the opinion, the *Genson* court expressly found that *Lambert* did not apply. "*Lambert* does not answer the question before us. First, notice—the core concern in *Lambert*—is traditionally associated with procedural due process, rather than substantive due process." *Genson*, 316 Kan. at 142. Procedural due process requires

8

"notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Robinson*, 281 Kan. 538, 548, 132 P.3d 934 (2006). And as the court in *Genson* pointed out, *Lambert* involved a lack of notice of wrongdoing that prevented the defendant's compliance with registration. 316 Kan. at 141-42. "Nevertheless, this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent." *Lambert*, 355 U.S. at 229. Buell has failed to show how the court's holding in *Genson* or *Lambert* supports his argument that in his case a culpable mental state was required.

The district court did not err in denying Buell's request for a jury instruction based on PIK Crim. 4th 52.010 because each of Buell's convictions were based on a violation of KORA, and no culpable mental state was required. Buell's requested jury instruction was therefore legally inappropriate. See *Hollins*, 320 Kan. at 242.

DID THE DISTRICT COURT ERR WHEN ANSWERING A JURY QUESTION?

Buell next argues that his statutory and constitutional rights were violated because he was not present during a portion of the trial where the jury requested a readback of testimony. "A claim that a defendant was deprived of his or her statutory and constitutional right to be present during a portion of the trial raises legal questions that are subject to unlimited review on appeal." *State v. Wells*, 296 Kan. 65, 89, 290 P.3d 590 (2012).

Buell also argues that the district court erred when it instructed a court clerk to orally communicate the court's answer to the jury question in violation of K.S.A. 22-3420(d). Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

9

*The district court erred by discussing a question from the jury outside Buell's presence.*

"A defendant has a constitutional and statutory right to be present at every stage of his trial. U.S. Const. Amend. VI; K.S.A. 22-3405." *State v. Jackson,* 49 Kan. App. 2d 116, 137, 305 P.3d 685 (2013). And K.S.A. 22-3420(d) requires a defendant to be present during any response to a jury question unless that appearance is waived:

> "(d) The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to discuss an appropriate response. The defendant must be present during the discussion of such written questions, unless such presence is waived. The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear testimony. The defendant must be present during any response if given in open court, unless such presence is waived. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record." K.S.A. 22-3420(d).

The facts here are uncontroverted. During deliberations, the jury asked for a readback of testimony. Rather than discussing the jury request in the presence of the defendant, the court discussed the request with Buell's attorney, Mr. Koksal, outside of the courtroom, and then went on the record:

> "THE COURT:  I'll go back on the record. We have Mr. Moser in the courtroom; I've spoken briefly with Mr. Koksal and explained what is going on, and what I intend on doing. He advised that he has no objection.
>
> "The clerk has notified me, just now, that one of the jurors have requested a partial [readback] of something from the testimony earlier given. We—I've not been experienced with this court reporter, but she has informed me that she doesn't—although she could read it back, or make an effort—depending on the circumstances, it would be very difficult, and highly un—unusual for her to read back. And so under those circumstances, I simply am going to advise the jury that they are to use the best

10

recollection they can in regards to the testimony as presented. And that they will have to make a decision based upon that. Mr. Moser, do you have any objection?

"MR. MOSER: No objection from the State, Your Honor.
"THE COURT: Mr. Koksal has advised he has no objection from the defense. And when he returns, I will talk to him again; make sure that he has no problems with that."

It is uncontroverted that this discussion occurred outside Buell's presence, though the court had consulted with his attorney. There is no evidence of Buell's waiver of his right to be present in the record. And the State concedes that the district court violated K.S.A 22-3420(d) by discussing the jury question outside Buell's presence.

*The district court also erred by instructing the clerk to answer the jury's question.*

Buell additionally argues that the district court erred due to the nature of its response to the jury question. After deciding the content of the answer to the jury, the court stated to the court clerk:

"If you would, Ms. Ryser, please notify the juror—or the jury that they are to use their best recollection in regards to the testimony as presented by the witnesses. And that we don't have the—the wherewithal at this point, to read back the—whatever they had requested."

The clerk responded, "[o]kay" and delivered the answer to the jury.

K.S.A. 22-3420(d) requires the court to "respond to all questions from a deliberating jury in open court or in writing." Here, neither occurred. Thus, the district court erred in its failure to follow K.S.A. 22-3420(d) when it answered the jury's question.

11

*The district court's errors were harmless.*

"When a defendant's right to be present is violated, an appellate court determines whether the error requires reversal by applying the constitutional harmless error standard." *State v. Corey*, 304 Kan. 721, 740, 374 P.3d 654 (2016); see *State v. King*, 297 Kan. 955, 968, 305 P.3d 641 (2013).

A court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569 (2011) (citing *Chapman*, 386 U.S. 18).

To determine whether the district court's error related to Buell's right to be present requires reversal, we apply a four-part test considering (1) the overall strength of the prosecution's case; (2) whether the defendant lodged an objection; (3) whether the communication concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter, and the manner in which it was conveyed to the jury; and (4) the ability of a posttrial remedy to mitigate the constitutional error. *State v. Walker*, 308 Kan. 409, 415, 421 P.3d 700 (2018) (citing *State v. Verser*, 299 Kan. 776, 789-90, 326 P.3d 1046 [2014]).

Here, the State's case is strong. There was significant evidence that Buell violated KORA by failing to disclose his internet activity.

As to the second factor, not only did Buell fail to object to the court discussing the answer to the jury question outside his presence, but his attorney agreed to the procedure. We note that the Kansas Supreme Court has considered the lack of an objection to a defendant's absence during a chambers conference or jury readback relevant to a harmless

12

error analysis. In *Corey*, 304 Kan. at 742, our Supreme Court concluded that the defendant's absence during a transcript readback to the jury was harmless error. The court noted that "the evidence was overwhelming, Corey's counsel did not raise any objection during the chamber's conference or the readback based on the lack of Corey's presence, and Corey did not pursue any posttrial remedies." *Corey*, 304 Kan. at 742.

Under the third factor from *Walker*, the discussion of the question was insignificant because Buell's attorney agreed with the answer the court gave the jury. The court conferred with both attorneys before providing an answer to the jury, and the content of the court's answer had little likelihood of changing the result of the trial. The court simply informed the jury a readback would not be possible. See *State v. Bolze-Sann*, 302 Kan. 198, 217, 352 P.3d 511 (2015) (error was harmless because there was no reasonable possibility that the error contributed to the verdict and the content of the court's response to the jury question was innocuous and insignificant). Finally, Buell did not seek any posttrial remedy prior to arguing the issue on appeal.

Considering these factors, we conclude beyond a reasonable doubt that "there is no reasonable possibility" that Buell's absence when the court discussed the jury question affected the verdict. *Ward*, 292 Kan. at 569; *Walker*, 308 Kan. at 415. But we emphasize that even though the district court clearly intended to seek the input of both the State and Buell on how to answer the jury's question, a defendant must actually be present when that discussion occurs to comply with K.S.A. 22-3420(d).

We also consider whether the district court's error in responding to the jury question orally rather than in writing was harmless under a constitutional standard. See *State v. Bowen*, 299 Kan. 339, 357, 323 P.3d 853 (2014). "A violation of the procedure for answering jury questions set out in K.S.A. 22-3420(3) constitutes both a violation of a defendant's statutory and constitutional right to be present under K.S.A. 22-3405(1) and the Sixth Amendment to the United States Constitution." 299 Kan. at 357.

"When violations of both statutory and federal constitutional rights arise from the same acts or omissions, the appellate court must apply the more rigorous of the two harmless error standards—the federal constitutional harmless error standard defined in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." *State v. McDaniel*, 306 Kan. 595, 603, 395 P.3d 429 (2017).

Applying this standard, reversal is not appropriate if the State, as the party benefitting from the error, can demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569.

A panel of our court considered a similar error in *State v. Womelsdorf*, 47 Kan. App. 2d 307, 319-26, 274 P.3d 662 (2012). There, the jury submitted a note to the judge requesting a written transcript of an interview. At the time the case was decided, K.S.A. 22-3420(3) (Torrence 2007) required a judge to answer a jury's question in open court. Instead, the judge answered the jury's question in writing. On appeal, a panel of our court found harmless error because there was no reasonable possibility the error contributed to the verdict. 47 Kan. App. 2d at 323.

Buell does not address whether the district court's error in answering the jury question through the court clerk resulted in harmless error. As discussed above, the evidence against Buell was strong, and Buell did not object to the clerk answering the jury's question on behalf of the court. There is no indication that the clerk answering the question had any impact on the trial.

Of course, the better practice would be to follow K.S.A. 22-3420(d), which requires the court to "respond to all questions from a deliberating jury in open court or in

14

writing." But here we find this error harmless because there is no reasonable possibility it affected the verdict. See *Ward*, 292 Kan. at 569; *Womelsdorf*, 47 Kan. App. 2d at 323.

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING THE JURY'S REQUEST FOR A READBACK OF TESTIMONY?

Buell's final argument on appeal is that the district court erred when it denied the jury's request for a readback of testimony.

*Standard of Review*

The district court's response to a jury question is reviewed for an abuse of discretion. *State v. Novotny*, 297 Kan. 1174, 1186, 307 P.3d 1278 (2013); see also K.S.A. 22-3420(d) ("In its discretion, the court may grant a jury's request to rehear testimony."). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

*The district court did not abuse its discretion in denying the request for a readback of testimony.*

It is the district court's duty to respond to a jury request in a "meaningful manner." *State v. Boyd*, 257 Kan. 82, 88, 891 P.2d 358 (1995). Here, the district court consulted with both the prosecutor and defense attorney and received their approval before issuing a response to the jury. The district court's response was that the jury was "to use their best recollection in regards to the testimony as presented by the witnesses. And that we don't have the—the wherewithal at this point, to read back the—whatever they had requested." The record does not contain any reference to what testimony the jury requested. But it is clear that both parties agreed the court's response was appropriate and did not object. We

find that the district court responded to the jury's question in a meaningful way based on information from the court reporter. See *Boyd*, 257 Kan. at 88.

Additionally, we find that Buell failed to preserve this issue through an objection at trial. In *State v. Fraire*, 312 Kan. 786, 794, 481 P.3d 129 (2021), the jury requested a transcript of the witnesses' testimony. The district court discussed the question with the prosecutor and defense attorney, and both agreed the appropriate response from the court should be that "'no, you should rely on your collective memories.'" 312 Kan. at 794. Fraire later challenged the court's response to the question on appeal, and the Kansas Supreme Court held, "This court has recognized the necessity of preserving issues relating to a trial court's response to a request from a jury. 'A defendant may waive the right to challenge the trial court's response to a jury request by failing to object.' *State v. Smith*, 258 Kan. 321, 327, 904 P.2d 999 (1995)." *Fraire*, 312 Kan. at 794.

Not only did Buell fail to object to the court's denial of the readback—his attorney agreed with the court's decision. We find that Buell has waived his right to challenge the district court's response by failing to preserve the issue with an objection at trial. See *Fraire*, 312 Kan. at 794.

Affirmed.